CHRIS KAO, CA Bar No. 227086
ckao@kaoandswope.com
RICHARD SWOPE, CA Bar No. 233200
rswope@kaoandswope.com
KAO & SWOPE LLP
115 Sansome Street, Suite 1204
San Francisco, CA 94104
Tel. 415.539.0996
Fax. 866.267.0243

Attorneys for Plaintiffs
LIGHTMED CORPORATION and LIGHT-MED (USA), INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIGHTMED CORPORATION, a Taiwan Corporation, and LIGHT-MED (USA), INC., a California Corporation<br><br>Plaintiffs,<br><br>vs.<br><br>ELLEX MEDICAL PTY. LTD., an Australian Company, and ELLEX, INC., a Minnesota Corporation<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiffs LIGHTMED CORPORATION and LIGHT-MED (USA), INC. (collectively, "LightMed") hereby plead their complaint for damages against Defendants ELLEX MEDICAL PTY. LTD. and ELLEX, INC. (collectively, "Ellex") as follows:

## THE PARTIES

1.      Plaintiff LightMed Corporation is a Taiwan corporation having its principal place of business at No. 1-1, Lane 1, Pao-An St. Sec. 3, Shulin City, Taipei 238, Taiwan. LightMed Corporation is engaged in the design, manufacturing, distribution and sales of ophthalmic laser systems, including the "LightLas SelecTor Deux" ("LightMed Laser") at issue in this matter.

2.      Plaintiff Light-Med (USA), Inc. is a California corporation having its principal place of business at 1030 Calle Cordillera, San Clemente, CA 92673.  Light-Med (USA), Inc. is engaged in the distribution and sales of ophthalmic laser systems, including the LightMed Laser at issue in this matter.

3.      Upon information and belief, Defendant Ellex Medical Pty. Ltd. is an Australia company having its principal place of business at 82 Gilbert Street, Adelaide AU 5000 Australia.  Ellex purports to be a manufacturer, distributor, and seller of ophthalmic laser systems.

4.      Upon information and belief, Defendant Ellex Inc. is a Minnesota corporation having its principal place of business at 7138 Shady Oak Rd., Eden Prairie MN 55344.

## JURISDICTION AND VENUE

5.      This civil action arises under the Lanham Act 15 U.S.C. §1051 et seq., California Business & Professions Code § 17200 *et seq.*, and federal and California common law.

6.     This court has jurisdiction over the parties and the subject matter of the action pursuant to 28 U.S.C. § 1331, 1332, and 1338, and 15 U.S.C. § 1121.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims not brought under a federal statute because those claims are related to, and form part of the same case or controversy as, the federal question claims.  Complete diversity exists because Plaintiff LightMed Corporation is a Taiwan corporation with a principal place of business in Taiwan; Light-Med (USA), Inc. is a California corporation with a principal place of business in California; Defendant Ellex Medical Pty. Ltd. is an Australian company with a principal place of business in Australia; and Ellex, Inc. is a Minnesota corporation with a principal place of business in Minnesota.  The amount in controversy exceeds $75,000.

7.     This court has personal jurisdiction over Ellex because Ellex, Inc. maintains an agent for service of process in this state and/or the alleged acts have occurred and are occurring in this state.

8.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c).  Ellex markets its products in this district, the alleged acts have occurred and are occurring in this district, and Ellex is subject to personal jurisdiction in this district.   Ellex Medical Pty. Ltd is a foreign company and as such may be sued in this district.  Venue is also proper pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1400(b).

## FACTUAL BACKGROUND

9.     Beginning at least as early as July, 2013, Ellex, through its patent attorney, threatened LightMed's U.S. distributors and demanded that they cease and desist sales of the LightMed Laser:

    a.   On or about July 23, 2013, Ellex sent Laser Locators, LLC, ("Laser Locators"), of Tampa, Florida, a cease and desist letter ("Laser Locators

Cease and Desist.").  A true and correct copy of the Laser Locators Cease and Desist is attached hereto as **Exhibit A**.

    b.  On or about July 25, 2013 Ellex sent Woodlyn Ophthalmic Instruments and Equipment ("Woodlyn"), of Arlington Heights, Illinois, a cease and desist letter ("Woodlyn Cease and Desist").  A true and correct copy of the Woodlyn Cease and Desist is attached hereto as **Exhibit B**.

    c.  On or about August 15, 2013 Ellex sent Barron Medical, of Chino Hills, CA, a Desist Letter ("Barron Medical Desist").  A true and correct copy of the Barron Medical Desist is attached hereto as **Exhibit C.**

The Woodlyn Cease and Desist, Laser Locators Cease and Desist, and Barron Medical Desist (collectively the "Cease and Desist Letters") were sent via Certified Mail Return Receipt Requested.

10.    On information and belief, Laser Locators, Woodlyn, and Barron Medical (collectively "the Distributors") are small companies lacking in-house patent counsel.

**I.    Ellex's Bad Faith Attempt To Enforce Alleged Patent Rights With the Knowledge That It Had No Patent Rights At the Time.**

11.    Through the Cease and Desist Letters, Ellex attempted to enforce alleged patent rights knowing that it had no such patent rights at the time.

12.    Specifically, Ellex alleged ownership of a U.S. application and foreign patents, namely "U.S. Patent Application No. 10/847,062 (the "'062 Application"), published under publication no. US 2004/021575; European Patent No.  EP1540403; and Japanese Patent No. JP2005538782."  Ellex failed to identify a single issued U.S. patent and enclosed a copy of the European and Japanese patent.  (*See* Exhibits A, B and C, Cease and Desist Letters.)

13.     Ellex targeted the Distributors' U.S. sales of the LightMed Laser:

> Ellex has learned that Laser Locators, LLC is offering for sale and selling in the United States an SLT/YAG Combination Laser manufactured by LightMed Corp. …which is marketed by LightMed under the brand name "LightLas SelecTor Deux…"

(Exhibit A.)

> Ellex has learned that Woodlyn Inc. … is offering for sale and selling in the United States an SLT/YAG Combination Laser manufactured by LightMed Corp. …which is marketed by LightMed under the brand name "LightLas SelecTor Deux…"

(Exhibit B.)

> Ellex has learned that your company Barron Medical consults on and offers for sale ophthalmic products manufactured by LightMed Corp. ("LightMed") of Taipei, Taiwan.  Be advised that LightMed manufactures an SLT/YAG Combination Laser, which is marketed under the brand names "LightLas SelecTor Deux" and "LightLas Deux SLT/YAG Combo…"

(Exhibit C.)

14.     Ellex then alleged that the LightMed Laser was covered by "one or more claims" of the '062 Application.  In fact, each and every claim of the '062 Application currently stands rejected over the prior art.  Furthermore, there has been no movement in the prosecution since June, 2010.  (Transaction History from USPTO Public PAIR, last visited on  8/23/13.)

15.     Despite the absence of a U.S. patent (or issued U.S. Application claim), Ellex demanded that Laser Locators and Woodlyn "immediately cease and desist from further or future marketing, offering-for-sale and selling of the LightMed SLT/YAG Combination Laser" in the United States.  Ellex also demanded that Barron Medical not "market, offer-for-sale or sell the LightMed/YAG Combination Laser."

16.     Ellex then "advised" Laser Locators and Woodlyn that if "you do not cease and desist, Ellex will take all actions available to it in law and equity" and demanded

"written confirmation" from Laser Locators and Woodlyn regarding their "intent to comply immediately with the foregoing demand." Ellex similarly "advised" Barron Medical that if "you offer-for-sale or sell this product after your receipt of this letter…Ellex will take all actions available to it in law and equity against your company".

17.     Ellex knew that it had no patent rights at the time, and that it could not demand a "cease and desist" upon a U.S. Patent Application and foreign patents. The Cease and Desist Letters were authored by a patent attorney who, along with his law firm, are also Ellex's attorney/agent of record before the United States Patent and Trademark Office in prosecuting the asserted '062 Application ("Ellex's Patent Attorney"). On information and belief, Ellex's Patent Attorney is experienced in patent matters and admitted before the United States Patent and Trademark Office.

**II.     Ellex's Frivolous Attempt To Assert Alleged Patent Rights Against That Which Ellex Explicitly Disclaimed Before The USPTO.**

18.     In addition, Ellex's threats of infringement were frivolous because Ellex admitted that the system implemented in the LightMed Laser was prior art and disclaimed any attempt to cover such a laser before the USPTO.

19.     The '062 Application relates generally to the field of combination lasers, whereby a single laser source can follow two different beam paths to provide different medical treatments- such as selective laser trabeculoplasty and glaucoma. A beam steerer directs the laser according to the selected treatment. All lasers require control over the amount of the energy impinging the tissue. Typical prior art combination lasers have an attenuator in each of the beam paths to reduce the amount of energy delivered by each beam. The attenuators in each beam path are separate from the beam steerer.

20.     Ellex disclaimed the typical combination laser system having separate attenuators in each beam path, and instead claimed its "invention" was the combination of a

beam steerer and the attenuator of one of the beam paths in a combination attenuator/beam steerer module. The combination attenuator/beam steering module used a halfway plate and a polarizer for regulating the intensity of the beam in the first beam path ***and*** for selectively deflecting the beam at the first wavelength into the second beam path.

21. During prosecution, the Examiner rejected each application claim over U.S. Patent No. 6,932,807 ("Tomita") in view of U.S. Patent No. 6,066,127 ("Abe"); U.S. 7,362,783 ("Spiekermann"); U.S. 4,732,460 ("Kele"); and WO9524671 ("Faris") (Office Action dated 4/7/08; Office Action dated 1/2/09.)

22. In response, Ellex amended each and every application claims to include the limitations of:

> ***an attenuator/beamsteering module*** which comprises a half wave plate and polarizer, provided outside the laser module ***for regulating the intensity of the beam in the first beam path and for selectively deflecting the beam at the first wavelength into the second beam path***

(Response to Office Action dated 1/2/09.) (emphasis added.)

23. In its Remarks, Ellex then admitted that a separate attenuator in each of the beam paths and a separate beam steering module would have been obvious and was not the subject of its invention:

> A ***possible solution*** would have been ***to have an attenuator in each of the beam paths and steer the beam between the paths as required***.

*Id*. (emphasis added).

24. Ellex further distinguished its "invention" on the use of the same half wave plate and polarizer to both attenuate the beam for one beam path AND to steer the beam between the two beam paths:

> The present invention overcomes the ***unnecessary use of a separate attenuator by using a combination of a half wave plate and polarizer to either attenuate the beam for one beam path or steer the entire beam to the other beam path***.

*Id*. (emphasis added).

25.    Ellex confirmed through the expert declaration of Mark Horsburgh, that separate attenuator and beam steering devices were the normal solution, and that Ellex's invention was the combination of the two devices into a single attenuator/beam steering element:

> Another requirement for an ophthalmic laser is control of the energy impinging the eye.  It is not practical to vary the output energy of the laser module.  ***The normal solution is to provide some form of attenuator in the beam that is variable to adjust the power impinging the eye by "dumping" some of the energy from the beam***.  For the polarized laser beam, this can be done using a rotating half wave plate that rotates between a position which allows substantially all of the polarized beam to pass and a position rotated 90 degrees which has maximum extinction.  ***The particularly elegant and clever solution in this current case is to combine these two devices into a single attenuator/beam steering element which both controls the energy of the laser beam in the main path and controls the energy deflected into the secondary path.  By combining both functions into a single element, the laser is made more compact by the removal of one element which would otherwise have been required***.  In my view, this, without the benefit of hindsight, a non-obvious step to take.

(Response to Office Action dated 1/14/10.) (emphasis added.)

26.    The LightMed Laser implements precisely the prior art "normal solution" that Ellex disclaimed through claim amendment and expert testimony.  The LightMed Laser does not combine an attenuator and a beam steerer "into a single attenuator/beam steering element which both controls the energy of the laser beam in the main path and controls the energy deflected into the secondary path."  Instead, the LightMed Laser has a beam steering module separate and independent from the attenuator in the "first beam path" (as used in the claims) or "main beam path" (as used in the Horsburgh declaration).  The LightMed Laser's beam steering module cannot provide attenuation for the "first beam path" or "main beam path."

27.    Unlike the Ellex "invention," the LightMed Laser does not "overcome[s] the unnecessary use of a separate attenuator by using a combination of a half wave plate and

polarizer to either attenuate the beam for one beam path or steer the entire beam to the other beam path."

28.    In the words of the Horsburgh expert declaration, the LightMed Laser does not have the "the particularly elegant and clever solution … to combine these two devices [separate attenuator and beam steering element] into a single attenuator/beam steering element which both controls the energy of the laser beam in the main path and controls the energy deflected into the secondary path."  Nor is the LighMed Laser "made more compact by the removal of one element which would otherwise have been required" by combining both functions into a single element, the laser is."

29.    Ellex knew or should have known through communications from LightMed and through Ellex's own investigation of the LightMed Laser that the LightMed Laser implements the disclaimed features that are further reflected in each application claim.

30.    As discussed above, the Cease and Desist Letters were signed by Ellex's Patent Attorney, who is the patent attorney/agent of record before the USPTO.  Ellex's Patent Attorney has first-hand knowledge of Ellex's disclaimers in the '062 Application.

31.    Moreover, in response to a cease and desist letter that Ellex sent to LightMed's French distributor asserting EP 154043 (the counterpart to the '062 Application), LightMed's counsel notified Ellex's French counsel about the above-identified disclaimer in the '062 Application and the function of the LightMed System.  (Letter dated September 8, from LightMed's counsel to Ellex's French counsel.)

32.    In a letter dated September 9, 2012, counsel for one of LightMed's UK distributors informed Ellex's counsel about Mr. Horsburgh's expert declaration before the USPTO, and how the LightMed Laser implements the system that Horsburgh disclaimed.

> 1.7    Mr. Horsburgh, in his statement to the USPTO on behalf of Ellex, explains that the patent's "clever solution" is to combine the attenuator with

the beam steering module into a single element which both controls the energy of the laser beam in the main path and controls the energy deflected into the secondary path.  Mr. Horsburgh states that by combining both functions into a single element, the laser is made more compact by the removal of one element which would otherwise have been required.

…

2.2     In short, however, it is clear that, to the extent that the claim goes beyond the common general knowledge, perhaps in the event that your client attempts to argue that the claim should be interpreted in the way Mr. Horsburgh put the invention in his submissions to the USPTO on your client's behalf, our client's product does not have those features.  ***By way of example only, our client's product attenuates the beam by use of separate attenuators in each beam path, and it does not combine the attenuator with the beam steering element.  The beam steering element in our client's product cannot provide attenuation for the YAG laser path.***

(Letter from Wragge & Co. to Gately LLP.)

33.     In a subsequent letter dated October 8, 2012, to one of LightMed's U.K. distributors, Ellex's UK counsel acknowledged that it had "obtained and taken apart the LightMed Laser."  (Letter from Gately LLP to Wragge & Co.)  A cursory review of the LightMed Laser would have revealed that the LightMed Laser is of a design that Ellex disclaimed in the '062 Application.  Similarly, in attempting to describe the LightMed Laser in terms of the EP claims, Ellex described the same features of the LightMed Laser that Ellex had disclaimed during prosecution of the '062 Application-- the beam steering module separate and independent from the attenuator in the "first beam path" (as used in the claims) or "main beam path" (as used in the Horsburgh declaration).  As discussed above, the '062 Application stands rejected and has seen no movement since June, 2010.  Even if a patent were to someday issue from the '062 Application, Ellex knew about the LightMed Laser design features that denied Ellex any right to allege infringement.

34.     In another letter dated October 15, 2012, to LightMed's French distributor, Ellex's French counsel repeated the same admissions and representations made in the October 8, 2012, letter by Ellex's UK counsel.

**III.   Ellex's False and Misleading Assertion of "Provisional Rights" After Having Made Material Amendments to Published '062 Application Claims.**

35.     In the Cease and Desist Letters,  Ellex further threatened provisional rights:

> Since we believe that the LightMed SLT/YAG Combination Laser that you are currently offering for sale is covered by one or more claims in our client's U.S. patent application, ***by reason of this communication, you now have actual notice in accordance with section 154(d)*** of Title 35 of the United States Code. This section of the United States Code entitles our client to ***provisional rights, that is, monetary damages, in all of your sales of this particular product occurring after receipt of this notice along with additional rights and damages for sales of this product occurring after issuance of a U.S. patent that covers the product.***

(Exhibits A, B, and C.)

36.     However, since the '062 Application was published as U.S. Application Publication 2004/0215175, each and every published claim has been withdrawn or amended such that they are not substantially similar.  The amendments including adding the following limitation to each remaining claim:

> [A]n attenuator/beamsteering module which comprises a half wave plate and polarizer, provided outside the laser module for regulating the intensity of the beam in the first beam path and for selectively deflecting the beam at the first wavelength into the second beam path…

(Response to Office Action dated 1/2/09.) (emphasis added.)  As discussed above, this limitation is not present in the LightMed Laser.  Instead, Ellex disclaimed the LightMed Laser in adding the limitation.

37.     Prior to sending the Cease and Desist Letters, Ellex knew that the published claims had been significantly amended and that it lacked provisional rights against the LightMed Laser.  The amendments were made nearly three years before the date of the Cease and Desist Letters.  As discussed above, Ellex's patent attorney is the attorney/agent of record in the '062 Application and the author of the Cease and Desist Letters.

## IV.    Harm to LightMed

38.    As a direct and proximate result of Ellex's wrongful acts, LightMed has suffered pecuniary damage.  Thus far at least one of the Distributors has ceased distribution of the LightMed Laser and removed the LightMed Laser from its website.  Ellex's letters to the Distributors have also required LightMed to incur costs to indemnify the Distributors.  In addition, LightMed has had to expend attention, time and resources to reassure the Distributors, and will need to prepare extra advertising and incur extra marketing costs to make up for the lost marketing opportunities as a result of the Cease and Desist Letters.  Finally, LightMed's brand and goodwill has suffered injury as a result of Ellex's allegations.

39.    Ellex's acts and conduct were in bad faith and constitute a misuse of the patent system.

### FIRST CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage)

40.    LightMed incorporates by reference as part of this cause of action the allegations contained in paragraphs 1 through 39.

41.    At all times relevant hereto, LightMed had existing relationships with existing and potential customers, all of which had and have a substantial probability of resulting in economic benefit to lightMed.  Ellex was aware of these relationships, and of the probable potential economic advantage to LightMed.

42.    As alleged above, Ellex engaged in wrongful acts and conduct including: 1) demanding that the Distributors cease and desist sales of the LightMed Laser and threatening "all actions available to it in law and equity" even though Ellex did not have an issued U.S. Patent with claims purporting to cover the LightMed Laser; 2) demanding that the Distributors cease and/or desist sales of the LightMed Laser and threatening "all actions

available to it in law and equity" even though Ellex had explicitly disclaimed the accused LightMed Laser through statements and expert testimony made before the USPTO; and 3) threatening and asserting "provisional rights" and "notice" even though Ellex had not only materially amended the '062 Application claims from their published version in U.S. Puclication No. US 2004/251575, but also amended them in a manner that disclaimed the LightMed Laser.

43.    The wrongful acts and conduct of Ellex were designed to interfere, and did interfere, with such relationships, thereby causing LightMed to lose the economic advantages to which it was entitled.  It is extremely likely that these relationships would have resulted in significant economic advantage to LightMed had Ellex not improperly interfered with them.

44.    As a direct and proximate result of the wrongful acts and conduct of Ellex, LightMed has suffered and will continue to suffer general and special damages, including lost profits in an amount to be proven at trial.

45.    As a further proximate result of Ellex's wrongful acts and conduct, LightMed has suffered and will continue to suffer an irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Ellex. LightMed is informed and believes, and based thereon alleges, that unless restrained by this Court, Ellex will continue the acts complained of herein.

46.    LightMed is informed and believes, and based thereon alleges, that Ellex has engaged in the conduct alleged herein with a conscious disregard of Ellex's rights, and with an intent to vex, injure or annoy such as to constitute oppression, fraud or malice, thereby entitling LightMed to punitive damages in an amount appropriate to punish or to make an example of Ellex.

## SECOND CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

47.     LightMed incorporates by reference as part of this cause of action the allegations contained in paragraphs 1 through 46.

48.     At all times relevant hereto, LightMed had existing contractual relations with the Distributors whereby LightMed would derive an economic benefit of selling the LightMed Laser in exchange for payment.

49.     At all times relevant hereto, LightMed had a reasonable expectancy of profit to be derived as a result of its contractual relations with the Distributors.

50.     At all times relevant hereto, Ellex knew of the contractual relationships existing between LightMed and the Distributors, and Ellex knew of LightMed's reasonable expectation of profit based upon such existing contractual relationships.

51.     Beginning with the Cease and Desist Letters, and continuing to the present, Ellex has made false and misleading threats of patent infringement specifically designed to interfere with LightMed's contractual relationships with the Distributors.  This conduct has induced at least one of the Distributors to cease and desist the sales and marketing of the LightMed Laser, thereby causing LightMed serious economic harm.

52.     As alleged above, Ellex has engaged in wrongful acts and conduct including: 1) demanding that the Distributors cease and desist sales of the LightMed Laser and threatening "all actions available to it in law and equity" even though Ellex did not have an issued U.S. Patent with claims purporting to cover the LightMed Laser; 2) demanding that the Distributors cease and/or desist sales of the LightMed Laser and threatening "all actions available to it in law and equity" even though Ellex had explicitly disclaimed the accused LightMed Laser through statements and expert testimony made before the USPTO; and 3)

threatening and asserting "provisional rights" and "notice" even though Ellex had not only materially amended the '062 Application claims from their published version in U.S. Publication No. US 2004/251575, but also amended them in a manner that disclaimed the LightMed Laser.

53. As a direct and proximate result of the wrongful acts and conduct of Ellex, LightMed has suffered and will continue to suffer general and special damages, including lost profits in an amount to be proven at trial.

54. As a further proximate result of Ellex's wrongful acts and conduct, LightMed has suffered and will continue to suffer an irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Ellex. LightMed is informed and believes, and based thereon alleges, that unless restrained by this Court, Ellex will continue the acts complained of herein.

55. LightMed is informed and believes, and based thereon alleges, that Ellex has engaged in the conduct alleged herein with a conscious disregard of Ellex's rights, and with an intent to vex, injure or annoy such as to constitute oppression, fraud or malice, thereby entitling LightMed to punitive damages in an amount appropriate to punish or to make an example of Ellex.

## THIRD CAUSE OF ACTION

**(Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq.*)**

56. LightMed incorporates by reference as part of this cause of action the allegations contained in paragraphs 1 through 55.

57. As alleged above, Ellex engaged in wrongful acts and conduct including: 1) demanding that the Distributors cease and desist sales of the LightMed Laser and threatening "all actions available to it in law and equity" even though Ellex did not have an issued U.S.

Patent with claims purporting to cover the LightMed Laser; 2) demanding that the Distributors cease and/or desist sales of the LightMed Laser and threatening "all actions available to it in law and equity" even though Ellex had explicitly disclaimed the accused LightMed Laser through statements and expert testimony made before the USPTO; and 3) threatening and asserting "provisional rights" and "notice" even though Ellex had not only materially amended the '062 Application claims from their published version in U.S. Puclication No. US 2004/251575, but also amended them in a manner that disclaimed the LightMed Laser. Ellex's wrongful acts are especially egregious because Ellex's Patent Attorney chose to direct the Cease and Desist Letters to small companies that Ellex knew were unlikely to have in-house patent counsel, instead of to LightMed.

58. Through the above acts, Ellex has engaged in both unfair and fraudulent, business acts or practices within the meaning of California's Unfair Practices Act, California Business and Professions Code section 17200 et seq.

59. Ellex's activities constitute an unfair business practice because they deprive LightMed of sales and marketing channels. By disseminating false representations and unlawful demands, Ellex has and continues to significantly threaten and harm competition. These harms and demands imposed on LightMed and its distributors far outweigh whatever benefits Ellex might gain by making demands without a legal right to do so.

60. Ellex's activities constitute a fraudulent business practice because, as discussed above, Ellex's representations and threats of patent infringement were false and misleading. Ellex's attorneys, including Ellex's Patent Attorney, are experienced patent attorneys, and therefore knew that none of the patents and applications identified in the Cease and Desist Letters conferred on Ellex any enforceable rights in the United States that could be asserted against the Distributors. The Cease and Desist Letters were bad faith

attempts to induce the Distributors into believing that Ellex had enforceable patent and provisional rights.

61.   The Distributors are small companies, without in-house patent counsel, that are likely to be deceived by LightMed's fraudulent threats and representations made by its patent attorney via Certified Mail Return Receipt Requested.

62.   LightMed has suffered an injury in fact under Cal. Bus. & Prof. Code § 17204. Woodlyn relied on Ellex's bad faith assertions and immediately ceases sales and marketing of the LightMed Lasers. At least one of the Distributors has also removed the LightMed Laser from its website. Ellex's letters to LightMed's Distributors have also required LightMed to incur costs to indemnify the Distributors. In addition, LightMed has had to expend attention, time and resources to reassure its distributors, and will need to prepare extra advertising and incur extra marketing costs to make up for the lost marketing opportunities as a result of the Ellex's letters. Finally, LightMed's brand and goodwill has suffered injury as a result of Ellex's allegations.

63.   As a result of the aforesaid acts by Ellex, LightMed has suffered and continues to suffer substantial damages and irreparable injury, for which LightMed is entitled to injunctive relief against Ellex under Cal. Bus. & Prof. Code § 17203.

64.   As a further proximate result of Ellex's wrongful acts and conduct, LightMed has suffered and will continue to suffer an irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Ellex. LightMed is informed and believes, and based thereon alleges, that unless restrained by this Court, Ellex will continue the acts herein complained of.

65.   LightMed is informed and believes, and based thereon alleges, that Ellex has engaged in the conduct alleged herein with a conscious disregard of Ellex's rights, and with

an intent to vex, injure or annoy such as to constitute oppression, fraud or malice, thereby entitling LightMed to punitive damages in an amount appropriate to punish or to make an example of Ellex.

66. Furthermore, Ellex has profited and in the future will profit unjustly from their unjust business practices. Accordingly, pursuant to Cal. Bus. & Prof. Code § 17203, LightMed seeks an award representing the amount of ill-gotten gains that must be disgorged by Ellex.

## FOURTH CAUSE OF ACTION

### (Common Law Unfair Competition)

67. LightMed incorporates by reference as part of this cause of action the allegations contained in paragraphs 1 through 66.

68. The foregoing acts and conduct of Ellex constitute unfair business practices and unfair competition under California common law. As a direct and proximate result of the acts and conduct of Ellex, LightMed has suffered and will continue to suffer general and special damages, including lost profits, in an amount to be proven at trial.

69. As a further proximate result of Ellex's unfair competition, LightMed has suffered and will continue to suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Ellex. LightMed is informed and believes, and based thereon alleges, that unless restrained by this Court, Ellex will continue the acts herein complained of.

70.     LightMed is informed and believes, and based thereon alleges, that Ellex has engaged in the conduct alleged herein with a conscious disregard of Ellex's rights, and with an intent to vex, injure, or annoy such as to constitute oppression, fraud, or malice, thereby entitling LightMed to punitive damages in an amount appropriate to punish or to make an example of Ellex.

### FIFTH CAUSE OF ACTION

### (Trade Libel)

71.     LightMed incorporates by reference as part of this cause of action the allegations contained in paragraphs 1 through 70.

72.     Through the Cease and Desist Letters to the Distributors, Ellex published untrue statements of facts, including the statement that the LightMed Laser infringed Ellex's patent rights; that Ellex had the right to demand that the Distributors "cease and desist from further or future marketing, offering-for-sale and selling of the LightMed SLT/YAG Combination Laser"; that Ellex had the right to threaten to "take all actions available to it in law and equity…including commencing an action for patent infringement upon the issuance of a U.S. patent"; and that Ellex had "provisional rights" with respect to the '062 Application and that Ellex had the right or capability of putting the Distributors on "notice."

73.     Ellex's statements were false in that, *inter alia*, 1) Ellex did not have a requisite issued U.S. Patent with claims purporting to cover the LightMed Laser; 2) Ellex had explicitly disclaimed the accused LightMed Laser through statements and expert testimony made before the USPTO; and 3) Ellex had materially amended the '062 Application claims from their published version, such that they disclaimed the LightMed Laser.

74.     Ellex knew its statements were false or made with reckless disregard for the truth in that the Cease and Desist Letters were authored by the same patent attorney and firm

that are the attorneys/agents of record in prosecuting the '062 Application before the United States Patent Office. Ellex also knew its statements about the LightMed Laser were false because it had notice of the patent disclaimer from communications between LightMed's counsel and Ellex's French counsel, and between counsel for LightMed's distributor Litechnica and Ellex's UK counsel.

75. Ellex's statements were not mere statements of opinion.

76. As a direct and proximate result of the wrongful acts and conduct of Ellex, LightMed has suffered and will continue to suffer general and special damages, including lost profits in an amount to be proven at trial.

77. As a further proximate result of Ellex's actions, LightMed has suffered and will continue to suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Ellex. LightMed is informed and believes, and based thereon alleges, that unless restrained by this Court, Ellex will continue the acts herein complained of.

78. LightMed is informed and believes, and based thereon alleges, that Ellex has engaged in the conduct alleged herein with a conscious disregard of Ellex's rights, and with an intent to vex, injure, or annoy such as to constitute oppression, fraud, or malice, thereby entitling LightMed to punitive damages in an amount appropriate to punish or to make an example of Ellex.

## SIXTH CAUSE OF ACTION

### (False Advertising 15 U.S.C. § 1125(a)(1))

79. LightMed incorporates by reference as part of this cause of action the allegations contained in paragraphs 1 through 78.

80.     As discussed above, Ellex has published and distributed false, deceptive, and untrue statements of facts, including the statement that the LightMed Laser infringed Ellex's patent rights; that Ellex had the right to demand that the Distributors "cease and desist from further or future marketing, offering-for-sale and selling of the LightMed SLT/YAG Combination Laser," that Ellex had the right to threaten to "take all actions available to it in law and equity…including commencing an action for patent infringement upon the issuance of a U.S. patent"; and that Ellex had "provisional rights" with respect to the '062 Application and that Ellex could put the Distributors on "notice." These statements constitute false or misleading advertising within the meaning of Section 43(a) of the Lanham Act 15 U.S.C. section 1125.

81.     Ellex is aware of the goodwill, reputation, and value represented and symbolized by LightMed's products. Ellex, with knowledge of the goodwill, reputation and value by LightMed's products continued to knowingly mislead the consuming public through the statements and conduct alleged herein. Ellex's acts have caused actual confusion or deception among members of the purchasing public who were actual or prospective purchasers of LightMed's products. Based on Ellex's conduct, LightMed is entitled to an award of treble damages for Ellex's willful acts under 15 U.S.C. § 1117, as well as actual damages in an amount to be proven at trial.

82.     Ellex's conduct is wrongful, malicious, fraudulent, deliberate, willful and intentional, thereby making this case exceptional, and Ellex is therefore entitled to recover costs of this action and attorneys' fees under 15 U.S.C. § 1117.

83.     As a further proximate result of Ellex's actions, LightMed has suffered and will continue to suffer immediate and irreparable injury not compensable by money damages, such that a preliminary and permanent injunction should issue against Ellex.

LightMed is informed and believes, and based thereon alleges, that unless restrained by this Court, Ellex will continue the acts herein complained of.

84. LightMed is informed and believes, and based thereon alleges, that Ellex has engaged in the conduct alleged herein with a conscious disregard of Ellex's rights, and with an intent to vex, injure, or annoy such as to constitute oppression, fraud, or malice, thereby entitling LightMed to punitive damages in an amount appropriate to punish or to make an example of Ellex.

## PRAYER FOR RELIEF

WHEREFORE, LightMed request entry of judgment in its favor and against Ellex as follows:

a. That Ellex and its officers, agents, servants, employees, attorneys and those persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise be preliminarily and permanently enjoined from (a) engaging in the acts of false or misleading advertising and unfair competition alleged herein, or any other acts that violate 15 U.S.C. § 1125(a); b) interfering with LightMed's relationships with its prospective customers or existing customers; and c) asserting that the LightMed Laser infringes the '062 Application;

b. That Ellex be ordered to retract i) all assertions of patent infringement; ii) all assertions of provisional rights; iii) all demands to cease and desist; iv) and all false, misleading, fraudulent, and unfair statements made to any of LightMed's distributors or customers through correction letters;

c. That LightMed recover from Ellex reasonable attorneys' fees, costs and disbursements relating to this action and this dispute pursuant to statutory law and otherwise;

d.      That the Court grant LightMed restitution from Ellex by disgorgement of all profits earned through Ellex's unlawful conduct;

e.      That the Court grant LightMed its actual damages according to proof at trial;

f.      That Ellex pay punitive and/or treble damages to LightMed pursuant to applicable law;

g.      That any monetary award include pre- and post-judgment interest at the highest rate allowed by applicable law; and

h.      That LightMed be awarded any such other and further relief as the Court may deem just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, LightMed respectfully demands a trial by jury on all claims and issues so triable.

Respectfully Submitted:

Dated: August 23, 2013                      By:   KAO & SWOPE LLP

Chris Kao
Richard Swope

Attorneys for Plaintiffs LightMed
Corporation and Light-Med (USA), Inc.

-23-
COMPLAINT